```
 1
 2
 3
 4
 5
 6
 7
 8                       IN THE UNITED STATES DISTRICT COURT
 9                      FOR THE EASTERN DISTRICT OF CALIFORNIA
10  FRANCISCO BARRETTO,
11              Plaintiff,              No. CIV S-07-1544 FCD DAD P
12        vs.
13  L. SMITH, et al.,                   ORDER AND
14              Defendants.             FINDINGS AND RECOMMENDATIONS
15  _____/
```

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. Defendants Look, Schirmer, Smith, and Wright have filed a motion to dismiss the case on the ground that plaintiff failed to exhaust available administrative remedies prior to bringing this action. Plaintiff has filed a timely opposition, and defendants have filed a timely reply.

**BACKGROUND**

In his amended complaint plaintiff alleges as follows. On April 3, 2007, a riot occurred between Asian Pacific Islander and Northern Hispanic inmates at High Desert State Prison ("HDSP"). Plaintiff acknowledges that he was involved in the riot. However, he alleges that while attempting to protect himself from Northern Hispanics, defendant Smith shot him in the upper left arm. Plaintiff further alleges that defendant Look then ordered him to submit to

1

handcuffs. Plaintiff alerted defendant Look that he had been shot. Nevertheless, defendant Look allegedly grabbed his arms and forcefully pulled them behind his back, ripping various tendons, muscles, and nerves. (Am. Compl. at 3-4.)

Plaintiff alleges that on the same day, prior to the riot, defendants Schirmer and Wright summoned him along with other Asian Pacific Islander inmates and informed them that both Asian Pacific Islander and Northern Hispanic inmates would be released from lock-down and returned to normal programming. Plaintiff alleges that he and his fellow inmates told defendants Schirmer and Wright that they intended to file a complaint against them for failing to protect the inmates' health and safety and for refusing to remedy the ongoing conflict between the Asian Pacific Islander and Northern Hispanic inmates. Plaintiff alleges that defendants Schirmer and Wright then assigned them to administrative segregation in retaliation. (Am. Compl. at 4.)

Finally, plaintiff alleges that, on December 19, 2007, defendant Smith approached him in administrative segregation and said "hey, your (sic) that dude I shot during that riot a couple months back huh, you kinda had that coming anyway for what your homies did to my partner on A yard last year, you know what's up you and your homies stick together and me and my homies stick together." (Am. Compl. at 7.)

Plaintiff alleges that defendants have violated his rights under the Eighth and First Amendments. He requests injunctive relief, monetary relief, and any further relief the court deems proper. (Am. Compl. at 8-12 & Mem. of Law at 1-9.)

**DEFENDANTS' MOTION TO DISMISS**

I. <u>Defendants' Motion</u>

Defendants argue that plaintiff's action should be dismissed because he brought this suit prior to exhausting available administrative remedies. (Defs.' Mot. to Dismiss at 1.) Although plaintiff provides excuses for his failure to exhaust, defendants contend that the court

/////

2

1  should disregard them because plaintiff's claims are contradicted by the sworn statements of
2  third parties.  (Id. at 7-8; Chacon Decl.; Lucas Decl.; Dangler Decl.; Emigh Decl.)

3        First, defendants Smith and Look state that plaintiff failed to timely submit an
4  administrative appeal regarding his excessive force claims against them.  Defendants
5  acknowledge that plaintiff received a gun shot wound on April 3, 2007, and that he received
6  treatment at an outside medical facility before returning to HDSP's Correctional Treatment
7  Center on April 26, 2007.  Defendants also acknowledge that plaintiff's stay at an outside
8  medical facility precluded him from filing an administrative appeal within fifteen days of the riot.
9  However, defendants argue that plaintiff had an obligation to submit a timely appeal upon his
10 return to HDSP when he again had access to the prison grievance process.  For example,
11 defendants contend, on June 29, 2007 prison officials received an appeal from plaintiff dated
12 June 27, 2007, regarding medical care and pain medication.  However, defendants argue that
13 prison officials did not receive an appeal from plaintiff addressing his excessive force claims
14 until July 10, 2007, several weeks after he left HDSP's Correctional Treatment Center.  Prison
15 officials "screened out" this appeal as untimely, rendering the in this lawsuit unexhausted and
16 subject to dismissal.[1]  (Defs.' Mot. to Dismiss at 8-9.)

17       Defendants Schirmer and Wright also argue that plaintiff failed to submit any
18 administrative grievance raising his failure to protect and retaliation claims against them.
19 Defendants argue that of plaintiff's three administrative appeals related to the April 3, 2007 riot,
20 none of them addressed his claims or allegations against defendants Schirmer or Wright, nor did
21 plaintiff pursue an appeal through the director's level of review on such claims.  Accordingly,
22 /////

---

[1] Defendants have attached to their motion declarations from correctional officers Chacon and Lucas who were assigned to HDSP's Correctional Treatment Center during plaintiff's stay in that facility. Officers Chacon and Lucas both declare that they recall plaintiff's stay in the infirmary but maintain that he never requested their assistance with the appeals process. They also declare that the normal practice at that facility is to assist any inmate who needs help accessing the appeals process or preparing an appeal. (Chacon & Lucas Decls. at 2.)

defendants Schirmer and Wright conclude that plaintiff's claims against them are unexhausted and should be dismissed. (Defs.' Mot. to Dismiss at 11; Dangler Decl.; Emigh Decl.)

Finally, defendant Smith argues that plaintiff submitted a staff complaint against him for comments he allegedly made on December 19, 2007, in which he allegedly suggested that he shot plaintiff in retaliation for plaintiff's prior conduct, but that plaintiff failed to pursue that staff complaint through the director's level of review. Defendant Smith contends that plaintiff only pursued the administrative appeal on that complaint through the first and second levels of review. Accordingly, defendant Smith concludes that plaintiff did not exhaust his administrative remedies with respect to this claim prior to filing suit and that the action against him should therefore be dismissed. (Defs.' Mot. to Dismiss at 10; Dangler Decl.; Emigh Decl.)

II. Plaintiff's Opposition

In his opposition to the pending motion plaintiff argues that he attempted to exhaust his administrative remedies with respect to the claim presented in his complaint several times. (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 3.) In this regard, plaintiff argues that on July 5, 2007, he submitted an appeal regarding defendants' excessive use of force during the riot and explained that he was physically unable to file his grievance any earlier because he was in the infirmary, suffering from numbness in both arms as a result of injuries suffered during the riot. He also argues that correctional officers Lucas and Chacon refused to assist him in preparing his appeal while he was being treated in the infirmary. Plaintiff claims that prison officials improperly screened out his administrative appeal, so he filed an appeal with the Chief of Inmate Appeals. Plaintiff argues that prison officials may not render the appeals process unavailable and then argue that the prisoner failed to exhaust. (Am. Compl. at 8 & Mem. of Law at 8.)

III. Defendants' Reply

In reply, defendants reiterate that plaintiff had the access the appeals process while being treated in the infirmary, but failed to properly exhaust his administrative remedies prior to filing this action. (Defs.' Reply at 2.) Specifically, defendants contend that, after plaintiff

4

arrived at HDSP's Correctional Treatment Center on April 26, 2007, he could have submitted an appeal, but he instead waited until July 5, 2007, to do so. Defendants reject plaintiff's contentions that officers Chacon and Lucas refused to assist him and note that his contentions are directly refuted by the officers in their declarations. (Id. at 3; Chacon Decl.; Lucas Decl.)

IV. <u>Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)</u>

By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

The U.S. Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. <u>Id.</u> at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. <u>Woodford v. Ngo</u>, 548 U.S. 81, 92-93 (2006).

In California, prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most appeals progress from an informal review through three formal levels of review. <u>See</u> Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal level, also referred to as the director's level, is not appealable and will conclude a prisoner's administrative remedy. Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of

review available before filing suit. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion. Jones v. Bock, 549 U.S.199, __, 127 S. Ct. 910, 921 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003). The defendants bear the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust–a procedure closely analogous to summary judgment–then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record."[2] Id. at 1120 n.14. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120. See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied __ U.S. __, 127 S. Ct. 1212 (2007). On the other hand, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 127 S. Ct. at 924.

V. Discussion

The Prison Litigation Reform Act requires a prisoner to properly exhaust his administrative remedies as long as prison officials can take some action in response to the complaint. See Woodford, 548 U.S. 84-85; Booth, 532 U.S. at 733-34; see also Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.'").

---

[2] Plaintiff was notified of the requirements for opposing a motion to dismiss brought pursuant to non-enumerated Rule 12(b) on June 4, 2008. (Order filed June 4, 2008 at 3-4).

In <u>Woodford</u>, California prison officials had placed a state prisoner in administrative segregation for allegedly engaging in "inappropriate activity" in the prison chapel. <u>Woodford</u>, 548 U.S. 86. The prisoner filed a grievance, but prison officials had rejected it as untimely because the prisoner failed to file it within fifteen working days of the action being challenged. The prisoner appealed the decision internally without success and subsequently brought an action pursuant to 42 U.S.C. § 1983. <u>Id.</u> at 86-87. The Supreme Court held that the PLRA requires proper exhaustion and explained that a prisoner does not satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective appeal. <u>Id.</u> at 83-84. In this regard, the Supreme Court reasoned that administrative exhaustion serves two primary purposes. <u>Id.</u> at 89. First, exhaustion protects administrative agency authority by allowing an agency the opportunity to correct its own mistakes. <u>Id.</u> Second, exhaustion promotes efficiency and may produce a useful record for a subsequent court case. <u>Id.</u> The Court noted that requiring proper exhaustion "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." <u>Id.</u> at 90. The Court concluded that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Id.</u> at 90-91.

California regulations apparently require an inmate to appeal a decision made or action taken by prison authorities "within 15 working days of the event or decision being appealed." Cal. Code Regs. tit. 15, § 3084.6(c). The Ninth Circuit has recently addressed this requirement and its potential impact on the PLRA exhaustion requirement for California prisoners in considering the <u>Woodford</u> case on remand from the Supreme Court. See <u>Ngo v. Woodford</u>, 539 F.3d 1108 (9th Cir. 2008). In that case the prisoner plaintiff sought informal review from the warden of restrictions placed upon his ability to participate in programs by the prison classification committee as a result of his violation. <u>Ngo</u>, 539 F.3d at 1109. However, he

7

sought that informal review three months after the restrictions were first imposed with the warden partially rescinding the restrictions. Id. Approximately three months later, and almost six months after the classification committee imposed the restrictions, the prisoner plaintiff submitted his first formal appeal challenging the restrictions to the prison's appeals coordinator. Id. That appeal as well as a subsequent appeal were rejected by prison officials as untimely under Cal. Code Regs. tit. 15, § 3084.6(c). Id. Against this factual background the Ninth Circuit concluded that the prisoner plaintiff had failed to properly exhaust his administrative remedies as required because he "sat on" his grievance regarding the classification committee's action "for months." Id. at 1110.[3]

The undersigned shares the concerns expressed by Circuit Judge Pregerson in his concurring opinion in Ngo v. Woodford, 539 F.3d at 1111-12. In particular, his observations regarding the significant incentive on the part of prison officials to find claims procedurally barred is born out by the undersigned's experience in considering an onslaught of motions to dismiss prisoner civil rights complaints for failure to exhaust administrative remedies. There would appear to be little doubt that appeals coordinators in California prisons of late are "screening out" prisoner grievances on procedural grounds in record number. In this case for instance, given plaintiff's injuries and need for treatment stemming from the incident about which he complains, the appeals coordinator certainly had the discretion to accept his grievance and to consider it on the merits. He chose not to do so but instead rejected the appeals on the procedural ground that they were untimely.

---

[3] The Ninth Circuit found it unnecessary to address whether California's fifteen working day limitations period for prisoner's administrative appeals amounts to a meaningful opportunity to exhaust because Ngo had waited months after the fifteen working days elapsed before beginning to questions the restrictions imposed on him. Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008). In his concurring opinion Circuit Judge Pregerson agreed with this conclusion but noted his "serious concerns about the constitutionality of California's prisoner grievance process" due to both the extremely short limitations period for filing a grievance and the lack of clarity in the applicable regulations about how appeals should be filed. Id. at 1111. In doing so, he noted that "[p]rison officials . . . have significant incentive to find that claims are procedurally barred, given the large number of prisoner grievances." Id.

The undersigned finds that under these circumstances, in moving to dismiss the complaint defendants Smith and Look have failed to meet their burden of raising and proving that plaintiff failed to exhaust his excessive force claims against them. See Jones, 127 S. Ct. at 921; Wyatt, 315 F.3d at 1119 & n.13. On July 5, 2007, plaintiff filed an administrative appeal at HDSP claiming that the defendants engaged in the excessive use of force. Therein, plaintiff explained that defendant Smith shot in him the arm during the April 3, 2007 riot and that defendant Look knew he had a gunshot wound but forced him to put his hands behind his back and placed handcuffs on him. Plaintiff acknowledged that he was filing his appeal well after the riot had occurred, but he explained that he was unable to file his appeal within the time limitations imposed by prison regulations because he was in the hospital for twenty-three days and in the prison infirmary for an additional forty-seven days as a result of injuries suffered during the incident about which he was complaining. Plaintiff also explained that during the intervening time his pain and discomfort was constant and limited his daily function. (Am. Compl., Ex. 5 & Dangler Decl. Ex. C.)

Although the appeals coordinator at HDSP acknowledged that plaintiff was being treated in the prison infirmary from April 3, 2007, through June 13, 2007, he nonetheless rejected plaintiff's appeal as untimely. Plaintiff then re-submitted the appeal, reiterating that he had been in constant pain from the gunshot wound suffered during the riot. He also explained that he had filed a separate appeal on June 29, 2007, and therefore could not file his administrative appeal regarding the actions of defendants Smith and Look until July 5, 2007, because he did not want to appear to be abusing the appeals process. See Cal. Code Regs. tit. 15, § 3084.4 ("submission of more than one non-emergency appeal within a seven-calendar-day period shall be considered excessive"). In addressing plaintiff's second-attempted appeal, the HDSP appeals coordinator also screened it out as untimely. Plaintiff then submitted the appeal to the Inmate Appeals Branch. The Inmate Appeals Branch also screened out the appeal noting that the appeal had been previously "rejected, withdrawn or cancelled." (Am. Compl., Ex. 5; Dangler Decl. Ex. C.)

Defendants have submitted declarations from officers Chacon and Lucas, signed under penalty of perjury, stating that plaintiff had access to the appeals process while he was in HDSP's Correctional Treatment Center. The officers declare that "[a]t no time during his stay in CTC, from April 26, 2007 through June 13, 2007, did inmate Barretto request my assistance in helping him access the appeals process or prepare an inmate grievance/appeal regarding any matter." (Chacon Decl.; Lucas Decl.) However, plaintiff has submitted a declaration as well as his verified complaint[4] stating that he was unable to personally complete an administrative appeal as a result of the gunshot wound he suffered, and that correctional officers Chacon and Lucas refused to assist him. Plaintiff also declares that he exhausted administrative remedies "available" to him. (Barretto Decl.; Am. Compl. at 8 & Mem. of Law at 8.) Finally, plaintiff has submitted a declaration from a fellow inmate signed under penalty of perjury in which the inmate declares that he helped plaintiff write his appeals because of plaintiff's "incapacitation." (Am. Compl., Ex. 5 Peyton Decl.)

The declarations of officers Chacon and Lucas are not entitled to greater weight than plaintiff's declaration or verified allegations or those statements of his witness also signed under penalty of perjury. Under these circumstances, in which the parties offer competing declarations setting forth differing versions of events, the court cannot make the necessary credibility determination to resolve the exhaustion issue on a motion to dismiss.[5] See e.g.,

---

[4] See, e.g., Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may serve as affidavit). See generally 5A Federal Practice & Procedure § 1399 (verified pleading may serve as affidavit if factually specific and based on personal knowledge).

[5] It is well established that prison officials may not render the administrative appeals process unavailable and then take advantage of a prisoner's failure to complete the process. See, e.g., Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."); Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007) (courts are "obligated to ensure any defects in exhaustion were not procured from the action or inaction of prison officials."); Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) ("If prison employees refuse to provide inmates with [] [appeal] forms when requested, it is difficult to understand how the inmate has any available remedies."); Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, []

10

Bradley v. McVay, No. 1:04-6128 AWI DLB PC, 2008 WL 495732 (E.D. Cal. Feb. 21, 2008) ("In a situation such as this in which the parties offer differing versions of events based on competing declarations, the [exhaustion] issue is one of witness credibility and the Court cannot make that requisite assessment on a motion to dismiss."); Fahie v. Tyson, 1:06-1132 AWI GSA PC, 2007 WL 3046016 (E.D. Cal. Oct. 18, 2007) (same). See also Ngo, 539 F.3d at 1111 (Pregerson, concurring). Accordingly, the motion to dismiss filed on behalf of defendants Smith and Look with respect to plaintiff's Eighth Amendment excessive force claims should be denied.

The court also finds that defendant Smith has not carried his burden of raising and proving that plaintiff failed to exhaust his administrative remedies prior to bringing suit with respect to his retaliation claim against Smith. See Jones, 127 S. Ct. at 921; Wyatt, 315 F.3d at 1119 & n.13. The court recognizes that plaintiff filed an administrative appeal immediately after defendant Smith made his alleged retaliatory remarks but failed to pursue that appeal through the director's level of review. However, plaintiff's grievance filed July 5, 2007, regarding the April 3, 2007 riot was sufficient to exhaust his administrative remedies with respect to his retaliation claim against defendant Smith because that claim arises from, and is part and parcel of, the

---

and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."); Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (prisoner's inability to utilize inmate appeals process as a result of prison officials' misconduct may justify failure to exhaust); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (reversing district court dismissal of a § 1983 action because it did not consider plaintiff's allegation that prison officials refused to provide him with grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (any remedy that prison officials prevent a prisoner from utilizing is not an available remedy as defined in section 1997e(a)). See also Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008) (possible exceptions to the PLRA exhaustion requirement include when administrative procedures are unavailable and when prison officials obstruct a prisoner's attempt to exhaust); Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.'"). Moreover, if plaintiff's version of events is accurate, the appeals coordinator at HDSP may have erroneously rejected his administrative appeal as untimely. Plaintiff did not leave the infirmary and have access to the appeals process until June 13, 2007. Plaintiff then had fifteen working days to file his appeal. See Cal. Code Regs. tit. 15, § 3084.6. Plaintiff filed his appeal on July 5, 2007. Not counting Saturdays, Sundays, and the July 4, 2007, holiday, plaintiff's appeal was timely filed on the fifteenth day. Id. § 4003 (defining "working day" to exclude weekends and holidays).

events of April 3, 2007. Plaintiff is not required to file a separate internal grievance to put prison officials on notice of every possible theory of recovery or every factual detail that he later discovers regarding the same incident.[6] Nor is this court permitted to impose such a requirement. See Jones, 127 S. Ct. at 922-23 (rejecting judicially-created "name-all-defendants" rule because PLRA only requires exhaustion of "such remedies as are available"). Having had the discretion to accept plaintiff's July 5, 2007 administrative appeal, investigate it, and consider it on the merits, defendants cannot now claim that they did not have sufficient notice of plaintiff's retaliation claim. This is not a case, for example, where plaintiff is asserting a retaliation claim against a different defendant for an act that took place under unrelated circumstances. Rather, according to plaintiff, defendant Smith shot him during the riot because of plaintiff's alleged prior interaction with defendant Smith's partner. Accordingly, the motion to dismiss plaintiff's First Amendment retaliation claim against defendant Smith should be denied.

However, the undersigned also concludes that defendants Schirmer and Wright have carried their burden of raising and proving that plaintiff failed to exhaust his administrative remedies with respect to his failure to protect and retaliation claims against them. See Jones, 127 S. Ct. at 921; Wyatt, 315 F.3d at 1119 & n.13. Plaintiff failed to pursue any administrative grievance through the director's level of review regarding the alleged actions of defendants

---

[6] Thus, in addressing the issue of what an administrative grievance must contain in order to satisfy the PLRA's exhaustion requirement the Seventh Circuit has held that:

> [a] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming. [The plaintiff's] two grievances were comprehensible and contained everything that Illinois instructed him to include. Defendants can't complain that he failed to do more.

Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). See also Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001) ("As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.").

Schirmer and Wright or regarding anything that would have put prison officials on notice of the nature of this wrong for which plaintiff sought redress. See 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Although plaintiff filed three grievances while housed at HDSP, none of them relate in any way to his retaliation claims against defendants Schirmer and Wright. (Dangler Decl. Exs. B-D.) Nor does plaintiff truly dispute this point.

As noted above, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 127 S. Ct. at 924. See also Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) (a prisoner "may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed"). Accordingly, the motion to dismiss plaintiff's Eighth Amendment failure to protect claim and First Amendment retaliation claim against defendants Schirmer and Wright should be granted.

**OTHER MATTERS**

Plaintiff has filed a request for an extension of time. At the time plaintiff filed his request, he was under no obligation to submit anything to the court. Accordingly, plaintiff's request will be denied as unnecessary.

**CONCLUSION**

IT IS HEREBY ORDERED that plaintiff's October 20, 2008 request for an extension of time (Doc. No. 32) is denied as unnecessary; and

IT IS HEREBY RECOMMENDED that defendants' August 8, 2008 motion to dismiss (Doc. No. 26) be granted in part and denied in part as follows:

1. Defendants' motion to dismiss plaintiff's complaint for failure to exhaust administrative remedies prior to filing suit as to the excessive use of force claims against defendants Smith and Look be denied;

2. Defendants' motion to dismiss plaintiff's complaint for failure to exhaust administrative remedies prior to filing suit as to the retaliation claims be granted as to defendants Schirmer and Wright but denied as to defendant Smith; and

3. Defendants' motion to dismiss plaintiff's complaint for failure to exhaust administrative remedies prior to filing suit as to the failure to protect claims against defendants Schirmer and Wright be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 19, 2008.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
barr1544.57